## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IMPOSSIBLE FOODS INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-311 (CFC) |
| | ) | |
| v. | ) | |
| | ) | |
| MOTIF FOODWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF IMPOSSIBLE FOODS INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING *INTER PARTES* REVIEW

OF COUNSEL:

Matthew R. Reed
WILSON SONSINI GOODRICH & ROSATI,
P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Wendy L. Devine
WILSON SONSINI GOODRICH & ROSATI,
P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

WILSON SONSINI GOODRICH & ROSATI,
P.C.
Ian R. Liston (#5507)
Jennifer A. Ward (#6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com
jward@wsgr.com

*Counsel for Plaintiff Impossible Foods Inc.*

Lorelei P. Westin
Christiana Garrett
WILSON SONSINI GOODRICH & ROSATI,
P.C.
12235 El Camino Real
San Diego, CA 92130
(858) 350-2300

G. Edward Powell III
WILSON SONSINI GOODRICH & ROSATI,
P.C.
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800


Dated: May 10, 2022

# <u>TABLE OF CONTENTS</u>

**PAGE(S)**

I.    NATURE AND STAGE OF PROCEEDINGS.................................................1

II.   SUMMARY OF ARGUMENT........................................................................1

III.  STATEMENT OF FACTS ..............................................................................3

IV.  ARGUMENT...................................................................................................6

      A.    The Weight of the Authority in this District Strongly Disfavors Stays Prior to the PTAB's Decision on Whether to Institute an IPR .........................................................................................................6

      B.    The Factors Weigh Against a Stay ......................................................10

           1.    The Simplification-of-Issues-for-Trial Factor Weighs Against a Stay ............................................................................10

           2.    The Status of the Litigation Factor Weighs Against a Stay.........................................................................................12

           3.    The Prejudice Factor Weighs Against a Stay. ..........................13

V.    CONCLUSION.............................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*,
    C.A. No. 15-516-LPS-CJB,
     2016 WL 558615 (D. Del. Feb. 11, 2016)............................................*passim*

*Arch Chems., Inc. v. Sherwin-Williams Co.*,
    C.A. No. 18-cv-2037-LPS, D.I. 48 (D. Del. Nov. 5, 2019) ......................8, 9

*Copy Prot. LLC v. Netflix, Inc.*, C.A. No. 14-365-LPS,
    2015 WL 3799363 (D. Del. June 17, 2015) .......................................7, 10, 15

*Invensas Corp. v. Samsung Elecs. Co., Ltd.*,
    C.A. No. 17-1363-MN-SRF,
    2018 WL 4762957 (D. Del. Oct. 2, 2018)...................................................8, 9

*IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB,
    2019 WL 3943058 (D. Del. Aug. 21, 2019)...................................................6

*KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2007) ................................................13

*Neste Oil OYJ v. Dynamic Fuels, LLC,* C.A. No. 12-1744-GMS,
    2013 WL 3353984 (D. Del. July 2, 2013))..................................................7, 8

*Novozymes N. Am., Inc. v. Danisco US Inc.*,
    C.A. No. 19-cv-01902-JDW,
    2020 WL 12895020 (D. Del. Mar. 31, 2020).......................................*passim*

*NuVasive, Inc. v. Neurovision Med. Prods., Inc.*,
    C.A. No. 15-286-LPS-CJB,
    2015 WL 3918866 (D. Del. June 23, 2015) ........................................6, 7, 12

*Personalized User Model, L.L.P. v. Google, Inc.*,
    C.A. No. 09-525-LPS,
    2012 WL 5379106 (D. Del. Oct. 31, 2012)..................................................16

*Pragmatus Mobile, LLC v. Amazon.com, Inc.*, No. 14- 436-LPS,
    2015 WL 3799433 (D. Del. June 17, 2015) ..................................................7

*Rideshare Displays, Inc. v. Lyft, Inc.*, C.A. No. 20-1629-RGA-JLH,
 2021 WL 7286931 (D. Del. Dec. 17, 2021) ....................................................7

*SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ........................................10

*SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS-CJB,
 2013 WL 144255 (D. Del. Jan. 11, 2013) ....................................................14

*Textron Innovations Inc. v. Toro Co.*, C.A. No. 05-486 (GMS),
 2007 WL 7772169 (D. Del. Apr. 25, 2007) ................................................8, 9

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
 C.A. No. 15-691-LPS-CJB,
 2015 WL 7824098 (D. Del. Dec. 3, 2015) ..................................................7, 8

*Universal Secure Registry, LLC v. Apple Inc.*,
 C.A. No. 17-585-CFC-SRF,
 2018 WL 4486379 (D. Del. Sept. 19, 2018) .........................................*passim*

*Yodlee, Inc. v. Plaid Techs. Inc.*, C.A. No. 14-1445-LPS-CJB,
 2017 WL 401896 (D. Del. Jan. 27, 2017) ....................................................16

**STATUTES**

35 U.S.C. § 314(a) ....................................................................................11

35 U.S.C. § 315(b) ....................................................................................15

35 U.S.C. § 316(a)(11)..............................................................................11

Plaintiff Impossible Foods Inc. ("Impossible Foods") respectfully opposes Defendant Motif FoodWorks, Inc.'s ("Motif") motion to stay this litigation pending resolution of its pre-institution petition for *inter partes* review ("IPR").  For the reasons set forth below, the Court should deny Motif's motion or, at minimum, deny it without prejudice to renew after the Patent Trial and Appeal Board ("PTAB") has made its institution decision on Motif's pending petition.

## I.      NATURE AND STAGE OF PROCEEDINGS

On March 9, 2022, Impossible Foods filed suit against Motif for direct, induced, contributory, and willful infringement of U.S. Patent No. 10,863,761 (the "'761 patent").  D.I. 1.

On April 20, 2022, Motif filed its IPR petition challenging the '761 patent. Impossible Foods' preliminary response to the petition is due on July 29, 2022.  An institution decision is expected on Motif's petition by October 31, 2022.

On April 29, 2022, Motif answered the Complaint, asserting counterclaims of non-infringement and invalidity of the '761 patent after receiving a 30-day extension.  D.I. 10.  Impossible Foods' responsive pleading is due May 20, 2022.

## II.     SUMMARY OF ARGUMENT

The Court should deny Motif's motion for a stay of this action pending the resolution of its pre-institution IPR petition because the stay would not simplify issues for trial before an institution decision, is not presented at a meaningful stage

of the proceedings, and would unduly prejudice Impossible Foods.

*First*, Motif urges the Court to depart from this District's sound and well-established practice of denying pre-institution motions to stay by asking the Court to stay this action before the PTAB has even decided whether it will institute review on Motif's petition.  Although Motif contends that the PTAB review will yield simplifying effects for trial, such simplifying effects first require that the PTAB actually institute review.  There is no way of predicting, without resorting to pure speculation, whether the PTAB will institute review in this case.  Furthermore, courts in this District have concluded that, until the PTAB decides to institute review, attempting to determine if a stay will simplify issues for trial is too speculative for this factor to weigh in favor of a stay.  Thus, this factor weighs against a stay.

*Second*, the current stage of this litigation weighs against granting Motif's pre-institution motion to stay.  Although the parties will expend some resources on initial discovery and disclosures in the time until the PTAB issues its institution decision, the vast majority of the parties' and this Court's future resources will be consumed by activities that are not set to occur until after the institution decision, such as the briefing and hearing on claim construction, the bulk of fact discovery, including depositions, expert disclosures and discovery, summary judgment, and trial.  Thus, the Court can revisit Motif's motion to stay ***after*** the PTAB makes its

institution decision—if it is appropriate to do so at that time—and still be able to stay most of the same litigation activity that Motif prematurely seeks to stay now. In contrast, if the Court grants Motif's request to stay the case now, prior to the PTAB's institution decision, and the stay proves to be unnecessary based on the PTAB's decision, then the stay will have delayed this case for no reason. Thus, this factor weighs against a stay.

*Third*, Motif's requested pre-institution stay would cause undue prejudice to Impossible Foods while affording a tactical advantage to Motif. Motif would continue its infringing behavior while delaying any discovery on Impossible Foods' infringement and damages claims, as well as a ruling on Impossible Foods' request for a permanent injunction. Meanwhile, Motif would ask the Court to defer to the PTAB where it hopes to pursue its prior art defenses. Thus, this factor weighs against a stay.

Because there is no sound reason justifying Motif's requested stay, the Court should deny Motif's motion.

## III.   STATEMENT OF FACTS

Impossible Foods is a leading plant-based food innovator and has successfully developed multiple award-winning plant-based meat replica products, including the IMPOSSIBLE BURGER, since its founding in 2011. D.I. 1, ¶¶ 1, 3, 16. Since the company discovered the utility of hemoproteins for replicating the experience of

cooking and eating meat in plant-based foods, Impossible Foods has applied for and received numerous patents that protect its manufacturing processes, its ingredients, and its finished products. *Id.*, ¶¶ 3, 13, 17. The patent-in-suit, the '761 patent, is one such patent.

Motif argues, in its "Statement of Facts," that its IPR petition is meritorious because of the duration and purported difficulty of the '761 patent's prosecution. Motif is incorrect, as Impossible Foods will demonstrate at the procedurally proper time. Moreover, Motif's characterization of the prosecution history neglects to note that the application from which the '761 patent issued was successfully prosecuted in less than two years. That application was filed on December 27, 2018, claiming original priority to a provisional application dated July 12, 2011. D.I. 1-1 at 1. The '761 patent is directed to a beef replica product comprising a muscle replica (which in turn comprises "0.1%-5% of a heme-containing protein") and a fat tissue replica. D.I. 1-1, col. 49, cl. 1. Dependent claims of the '761 patent recite additional limitations such as "a connective tissue replica" and a requirement that the beef replica product "contain[] no animal products." *Id.*, cls. 2, 12. Hundreds of references were cited during the prosecution of the '761 patent, including the McMindes reference on which Motif relies in every ground for challenge in its IPR petition. *See* D.I. 1-1 at 3; D.I. 9-1 at 19-20. On December 15, 2020, the '761 patent issued to Impossible Foods. D.I. 1-1 at 1.

Motif's bare assertion that it "is not infringing, and has never infringed, the '761 Patent" is not credible; the evidence of Motif's infringement is overwhelming. In 2019, Motif spun out from Ginkgo Bioworks with Ginkgo's CEO describing a plan for Motif to "brew up the next 100 hemes so that we can see many more Impossible Burgers in the next few years." D.I. 1, ¶ 39.  Having been formed for the purpose of copying Impossible Foods' patented products, Motif moved quickly to begin infringing.  In April 2021, Motif filed a Generally Regarded As Safe ("GRAS") notice with FDA for HEMAMI—a hemoprotein-based ingredient that, according to Motif, provides "meat alternatives" with "[t]he real umami flavors, appearance and aromas of meat." *Id.*, ¶¶ 24-27.  The GRAS notice notes that, like Impossible Foods, Motif manufactures its hemoprotein via "fermentation from a modified strain of *Pichia pastoris*" yeast, which is from the "same lineage as" Impossible Foods' proprietary yeast. *Id.*, ¶ 26; D.I. 1-2 at 10.  Motif proceeded to demonstrate and trial infringing burgers made with HEMAMI on various occasions. D.I. 1, ¶¶ 28-30.  Motif announced the commercial launch of HEMAMI in December 2021. *See id.*, ¶¶ 32, 37-38 & n.5.  Multiple industry commentators have noted that Motif's HEMAMI copies and facilitates copying of Impossible Foods' patented technology. *Id.*, ¶¶ 37-38.

On March 9, 2022, Impossible Foods filed this lawsuit.  Motif filed its petition for IPR with the PTAB on April 20, 2022, and the present motion, requesting a stay

of this case, a few days later.  The PTAB is expected to decide whether to institute Motif's IPR petition by October 20, 2022.

## IV.   ARGUMENT

Courts in this District primarily consider three factors when deciding a motion to stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, C.A. No. 15-516-LPS-CJB, 2016 WL 558615, at *1 (D. Del. Feb. 11, 2016); *NuVasive, Inc. v. Neurovision Med. Prod., Inc.*, C.A. No. 15-286-LPS-CJB, 2015 WL 3918866, at *1 (D. Del. June 23, 2015).  Further, this Court has considered how a stay will impact the burden of litigation. *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 3943058, at *3 (D. Del. Aug. 21, 2019) (Bryson, J., sitting by designation).

### A.   The Weight of the Authority in this District Strongly Disfavors Stays Prior to the PTAB's Decision on Whether to Institute an IPR

A pre-institution stay is uncommon in the District of Delaware because "[d]elay is not favored in litigation" and "putting the case on hold until the decision to institute is made is likely less efficient than continuing on track through discovery." *Universal Secure Registry LLC v. Apple Inc.*, C.A. No. 17-585-CFC-

6

SRF, 2018 WL 4486379, at *3 (D. Del. Sept. 19, 2018). Indeed, at this stage, "any expected simplification rests on speculation that such institution will occur." *Id.*, at *2 (citing *Advanced Microscopy*, 2016 WL 558615, at *2).

At the pre-institution stage, courts in this District have repeatedly denied requests to stay the action. *E.g.*, *Rideshare Displays, Inc. v. Lyft, Inc.*, C.A. No. 20-1629-RGA-JLH, 2021 WL 7286931, at *3 (D. Del. Dec. 17, 2021); *Novozymes N. Am., Inc. v. Danisco US Inc.*, C.A. No. 19-1902-JDW, 2020 WL 12895020, at *2 (D. Del. Mar. 31, 2020); *Universal Secure Registry*, 2018 WL 4486379, at *5; *Advanced Microscopy*, 2016 WL 558615, at *3; *NuVasive*, 2015 WL 3918866, at *3; *Copy Protection LLC v. Netflix, Inc.*, C.A. No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015); *Pragmatus Mobile, LLC v. Amazon.com, Inc.*, No. 14-436-LPS, 2015 WL 3799433, at *2 (D. Del. June 17, 2015).

The few Delaware decisions granting a pre-institution stay that Motif cites are unpersuasive as those stays were based on PTAB statistics that are now outdated and/or inapposite facts. D.I. 9 at 12-13. For example, a court in this District, with respect to the *Neste Oil* decision that Motif cites, explained that the decision was motivated in part "by the fact that the moving party submitted statistical data [from 2013] showing that, at the time the motion to stay was pending, the PTAB had granted review in 'nearly all' of the IPR petitions on which it had issued decisions." *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, C.A. No. 15-691-

LPS-CJB, 2015 WL 7824098, at *2 n.3 (D. Del. Dec. 3, 2015) (examining *Neste Oil OYJ v. Dynamic Fuels, LLC,* C.A. No. 12-1744-GMS, 2013 WL 3353984, at *4 n.4 (D. Del. July 2, 2013)).

Compared to the IPR institution statistics relied on in Motif's cited case—statistics gathered in 2013 when the IPR process was new and "when the PTAB was granting review as to 'nearly all' of the IPR petitions on which it had then issued decisions"—"more recent data suggests that review is being instituted in far fewer cases." *Advanced Microscopy,* 2016 WL 558615, at *2. The statistics submitted and cited by Motif show that the institution rate for petitions in FY2021 was only 59%. D.I. 9-1, Ex. 3 at 8. The overall institution rate was even lower for petitions in the chemical arts—only 51%. *See* Ex. A at 9. "The more that the statistical likelihood of the PTAB instituting review on any petition seems less like 'near certainty' and more like 'fair probability,' the less reasonable it seems to stop a district court proceeding after it has started—only to perhaps be required to start it up again later if the PTAB issues an unfavorable decision to the petitioner." *Advanced Microscopy,* 2016 WL 558615, at *2. Moreover, courts in this District have warned against relying on such statistics at all when deciding whether to grant a motion to stay because "acceptance of a specific statistical threshold as sufficient justification for a stay would abrogate the discretionary nature of the inquiry." *Invensas Corp. v. Samsung Elecs. Co.,* C.A. No. 17-1363-MN-SRF, 2018 WL

4762957, at *2 n.2, *5 (D. Del. Oct. 2, 2018); *see also Textron Innovations Inc. v. Toro Co.,* C.A. No. 05-486 (GMS), 2007 WL 7772169, at *3 (D. Del. Apr. 25, 2007) ("The court is confident that the PTO examines each matter on its own merit, so although the court finds the statistics interesting, they bear little weight on the court's decision . . . .").

Motif's reliance on *Arch Chemicals, Inc. v. Sherwin Williams Co.*, C.A. No. 18-2037-LPS, D.I. 48 (D. Del. Nov. 5, 2019), is also unavailing.  In *Arch Chemicals*, Judge Stark's decision was based, in part, on the fact that the parties were not competitors, which is not the case here.  *See* C.A. No. 18-2037-LPS, D.I. 48.  As discussed below, the parties here are competitors and Impossible Foods will be prejudiced by a stay, particularly an immediate one based on pure speculation about an event that is six months in the future.  Moreover, although the *Arch Chemicals* case was in a "nascent" stage, that appears to be because the parties had been engaged in settlement discussions since the filing of the case.  *Arch Chems.*, C.A. No. 18-2037, D.I. 36 at 3-4 (attached hereto as Ex. B).  Unlike the parties in *Arch Chemicals* that were negotiating a settlement, Impossible Foods is ready to move forward with this case.

As for Motif's reliance on cases from other districts (D.I. 9 at 12-13), courts in this District have declined to follow such cases because they are "not binding on this court, and inconsistent with the weight of authority in this district."  *Universal*

*Secure Registry*, 2018 WL 4486379, at *2, n.3.

    **B.**    **The Factors Weigh Against a Stay**

        ***1.***    ***The Simplification-of-Issues-for-Trial Factor Weighs Against a Stay.***

The simplification-of-the-issues-for-trial factor weighs against a stay here. Courts in this District have held that "the 'simplification' issue does *not* cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for [IPR]." *Advanced Microscopy*, 2016 WL 558615, at *2 (emphasis added); *Copy Prot.*, 2015 WL 3799363, at *1 (same). Further, the Supreme Court's 2018 decision in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), made institution a "binary" decision such that institution must be granted either on all challenged claims or none, causing "issue simplification" to become even more "depend[ent] on whether the PTAB institutes or dismisses" the petition. *See Universal Secure Registry*, 2018 WL 4486379, at *3 ("Without any certainty as to whether the PTAB will institute review, the extent to which the issues before the court might be simplified remains unknown.").

Here, Motif's arguments regarding simplification all hinge on the PTAB instituting IPR. D.I. 9 at 8-13. Thus, "[u]nless the PTAB institutes IPR proceedings, [defendant's] argument regarding the alleged simplification of issues for trial rests on the mere speculation that such institution will occur." *Novozymes*, 2020 WL 12895020, at *2 (internal quotation marks omitted). Indeed, "[i]f no review is

10

instituted, the asserted basis for a stay will fall away." *Advanced Microscopy*, 2016 WL 558615, at *2.  None of Motif's arguments make the effect of a stay any less speculative at this time.

Motif's contention that there is a "strong likelihood that review will be instituted" (D.I. 9 at 13), is nothing more than self-serving speculation.  At this point, all that has happened in the IPR is that Motif has filed a petition requesting PTAB review.   At this time, that record is entirely one-sided (Impossible Foods' preliminary response is due at the end of July) and the PTAB is nowhere near weighing the merits of the petition.  Yet, Motif effectively asks this Court to rule that the mere filing of an IPR petition is sufficient to bring this Court's ongoing proceedings to a premature halt.  The PTAB would not decide institution at this stage, before the patentee has a fair opportunity to respond, and neither should this Court.

Even if the PTAB were to institute Motif's IPR, that does not mean that the PTAB will have found that Motif's challenge to all claims—or more than one claim—is likely to succeed.  An institution decision means only that the PTAB has determined that "there is a reasonable likelihood that the petitioner would prevail with respect to at least [*one*] of the claims challenged in the petition."  35 U.S.C. § 314(a).  This is further reason why this litigation should not be stayed prior to an institution decision.  On the chance that Motif's petition is instituted, the IPR will

not be complete until at least October 2023.  35 U.S.C. § 316(a)(11).  Issuing a stay now for the duration of the IPR proceedings, despite the fact that some—or all—of the challenged claims are likely to survive the challenge, and waiting until October 2023 to begin fact discovery will prevent the timely advance of this action. Therefore, this factor weighs against a stay.

## 2.    *The Status of the Litigation Factor Weighs Against a Stay.*

The current status of this litigation also weighs against a stay.  Party and Court resources would not be wasted if this case moves forward at least until the PTAB's decision on whether to institute.  Since an institution decision is expected by October 2022, the decision "will come before the parties expend significant resources on discovery or claim construction."  *Novozymes*, 2020 WL 12895020, at *1.  Indeed, "it is likely that the institution decision will precede large scale discovery efforts." *Id.*; *see also Universal Secure Registry*, 2018 WL 4486379, at *3.  "There is nothing in this record to suggest that engaging in fact discovery and preparation for claim construction for an additional few months pending action by the PTAB will unusually tax or waste the resources of the parties."  *Universal Secure Registry*, 2018 WL 4486379, at *3; *see also NuVasive*, 2015 WL 3918866, at *2 (finding "the modest amount of case-related activity that will have occurred in the interval" between Defendant's pre-institution motion to stay and the institution decision "will not have amounted to a large-scale waste of resources").

Much of the fact discovery that the parties will conduct will not be wasted regardless of whether the IPR is instituted.  Discovery on secondary considerations of non-obviousness is highly relevant to the validity analysis and can be used in the PTAB as well.  This includes discovery regarding sales information for the parties' products that practice the '761 claims, the need for the patented invention, copying, skepticism, and unexpected results.  *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 406 (2007) (identifying secondary considerations).  On the other hand, a stay could delay the parties' ability to conduct fact discovery for up to 18 months after the case was filed.  Indeed, "putting th[is] case on hold until the decision to institute is made is likely less efficient than continuing on track through discovery."  *Universal Secure Registry,* 2018 WL 4486379, at *3.  Likewise, any progress that the parties make toward initiating the claim construction process has value regardless of whether an IPR is instituted.  *Id.* (denying a stay where parties had engaged in some "preliminary discovery" because "it is more practical to allow preliminary claim construction activity to proceed while awaiting the PTAB's decision on whether to institute proceedings on [the] petitions").  Thus, this factor weighs against a stay.

### 3.    *The Prejudice Factor Weighs Against a Stay.*

A stay will unfairly prejudice Impossible Foods.  Impossible Foods and Motif are direct competitors, and Motif asks the Court to defer to the PTAB—in front of which it hopes to pursue its prior art defenses while delaying discovery on

Impossible Foods' infringement and damages claims before this Court.  This would give Motif a distinct tactical advantage, all while it continues with its infringing behavior.

As an initial matter, Motif's assertions that Impossible Foods' conduct demonstrates that Impossible Foods will not be prejudiced are unfounded.  For example, Motif's contention that Impossible Foods somehow delayed in bringing suit ignores the time Impossible Foods took to investigate its claim.  Moreover, Motif did not announce the launch of any commercial products until shortly before the suit was filed.  Similarly, Motif's contention that Impossible Foods will not be prejudiced by a stay because Impossible Foods did not seek a preliminary injunction is nonsensical.  Under Motif's argument, anytime a plaintiff does not move for and secure a preliminary injunction, a defendant can stall the litigation by filing a petition for IPR.  A number of considerations go into whether to file for a preliminary injunction, including factors irrelevant to prejudice to the plaintiff, making it an improper indicator of prejudice for purposes of a motion to stay.  *See SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS-CJB, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013) (citing "the high burden one must face to obtain a preliminary injunction and the difficulty in doing so without first having access to substantial discovery" as a reason why a plaintiff may not seek a preliminary injunction).

Likewise, Motif overstates Impossible Foods' alleged "lack of urgency" with

respect to the instant motion.  *See* D.I. 9 at 17.  Motif demanded a meet and confer immediately after filing its IPR petition without giving Impossible Foods any time to review the petition, let alone consider the merits of the petition or the instant motion.  A few days to coordinate schedules and consider the petition and motion does not equate to delay or a lack of urgency.  Moreover, if any party has sought to delay this case, it is Motif: first, by seeking a 30-day extension to respond to Impossible Foods' Complaint (which Impossible Foods granted as a courtesy), and second, by seeking a stay with the instant motion based on an event that may not happen at all, and in any event will not happen for another six months.

Additionally, Motif is attempting to gain a tactical advantage for its prior art defenses while stalling discovery into its own infringement, including willful infringement, and damages.  *Novozymes*, 2020 WL 12895020, at *3 ("Staying the case at this point would allow Defendants to evade discovery on the claims at issue in this litigation and risks 'prolonging the final resolution of the dispute and thereby may result in some inherent prejudice to the plaintiff.'"); *see also Copy Prot.*, 2015 WL 3799363, at *1 (same).  Indeed, Motif seeks to evade discovery and prosecution of Impossible Foods' claims before this Court by delaying an infringement finding as long as possible while advancing its affirmative claim of alleged invalidity.  This is contrary to the codified policy for IPRs that allows a district court case to proceed ahead of an IPR.  35 U.S.C. § 315(b) (allowing defendants up to a year to file an IPR

petition).

Denying Motif's stay, on the other hand, will not result in any great harm to Motif. Although Motif will be required to expend some resources prior to the institution decision, none are so great as to amount to undue hardship. *Yodlee, Inc. v. Plaid Techs. Inc.,* C.A. No. 14-1445-LPS-CJB, 2017 WL 401896, at *2 (D. Del. Jan. 27, 2017) ("A movant's failure to articulate a clear hardship or inequity that it would suffer in the absence of a stay also weighs against such relief."); *Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012) (where movant points to "no other hardship other than the expense of litigation and the risk that the reexaminations will render the case moot . . . these do not rise to the level of undue hardship favoring a stay.").

Thus, this factor weighs against a stay.

## V.     CONCLUSION

For the foregoing reasons, Impossible Foods respectfully requests that the Court deny Motif's motion.

WILSON SONSINI GOODRICH & ROSATI, P.C.

*/s/ Ian R. Liston*

OF COUNSEL:

Ian R. Liston (#5507)
Jennifer A. Ward (#6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com
jward@wsgr.com

Matthew R. Reed
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

*Counsel for Plaintiff Impossible Foods Inc.*

Wendy L. Devine
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Lorelei P. Westin
Christiana Garrett
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real
San Diego, CA 92130
(858) 350-2300

G. Edward Powell III
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800

Dated: May 10, 2022

17

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document complies with the type-volume limitations specified in D. Del. LR 7.1.3 and the Court's November 6, 2019 Standing Order Regarding Briefing in All Cases because it uses a 14-point Times New Roman typeface and contains 3,881 words as determined by the word count feature of Microsoft Word (excluding the caption, tables, and signature blocks).

*/s/ Ian R. Liston*
Ian R. Liston (#5507)

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2022, I caused the foregoing

document to be served, by CM/ECF, upon all counsel of record.

*/s/  Ian R. Liston*
Ian R. Liston (#5507)