IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 22-311 (WCB) ) |
| MOTIF FOODWORKS, INC. and GINKGO BIOWORKS, INC., | ) **PUBLIC VERSION** ) ) |
| Defendants. | ) |

**DEFENDANT MOTIF FOODWORKS, INC.'S LETTER BRIEF
SEEKING AN ORDER COMPELLING PRODUCTION OF ALLEGED
ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT DOCUMENTS**

OF COUNSEL:

Joseph M. Paunovich
Ryan Landes
Sandra L. Haberny
Sarah Cork
Razmig Messerian
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA  90017
(213) 443-3000

Stephen Q. Wood
Trevor J. Quist
Derek Huish
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
2755 E. Cottonwood Parkway
Suite 430
Salt Lake City, UT  84121
(801) 515-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
ccucuzzella@morrisnichols.com

Geoffrey A. Kirsner
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor,
New York, NY  10010
(212) 849-7000

Sandy Shen
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C.  20005
(202) 538-8000

*Attorneys for Defendant Motif FoodWorks, Inc.*

**Confidential Version Filed: August 29, 2023**
**Public Version Filed: September 5, 2023**

Motif respectfully requests that the Court order Impossible to produce documents withheld on attorney-client privilege and work product grounds relevant to Motif's inequitable conduct counterclaim.[1] As explained below, any applicable privilege or protection has been waived.

I. **Background**

In December 2022, Motif filed *inter partes* review petitions challenging the validity of certain patents asserted in this litigation. Certain IPR grounds were based on Impossible's own prior art ("Brown"). WSGR represents Impossible in the IPRs, and the patents were originally prosecuted by Fish. Months after Motif filed its IPR petitions, Impossible made multiple self-serving statements to the Patent Office that put its counsel's strategic legal analysis squarely at issue.

*First*, through its **Fish counsel**, Impossible petitioned the Patent Office in March 2023 to "correct" priority of twelve asserted patents' family members[2] to claim the benefit of Brown (*inter alia*). D.I. 152-1, Exs. 10-21. Impossible later filed substantively similar petitions for the asserted patents on May 30, 2023.[3] D.I. 152-1, Exs. 1-4. Impossible/Fish told the Patent Office that it "first *became aware* of omissions in the benefit claim" of the asserted patents "after *detailed analysis* of the petitions for Inter Partes Review" filed by Motif, and that it had "conduct[ed] a *diligent investigation* into the challenges" of the IPRs, "including invalidity and priority issues, *investigation* of the extensive patent family and prosecution histories of each family, as well as *consulting with IPR counsel* to *take into consideration* the procedural complexities presented by co-pending litigation." *E.g.*, D.I. 152-1, Ex. 1 at 3 (all emphasis added). Impossible insisted that its earlier "omission" in the benefit claim and repeated failures to correct priority—indeed, the "entire delay between the date the benefit claim was due … and the benefit claim is being filed," a period of at least six years—"*was made unintentionally*." *Id.* at 3.

*Second* and concomitantly, through its **WSGR counsel**, Impossible told the PTAB in its Preliminary Patent Owner Responses in an effort to defeat institution of review that "[r]eference to [Brown, *inter alia*] was *unintentionally* omitted," and that "Impossible has *taken measures* to correct this unintentional omission through the filing of a petition and certificate of correction with the Office." Ex. 1, IPR2023-00206, Paper 8 (Mar. 20, 2023) at 10, Paper 9 (Ex. 2) (Apr. 13, 2023) at 2. Impossible made no secret of its intent in seeking priority "correction," admitting that, "[w]hen granted, Brown would fail to qualify as prior art." Ex. 1 at 10; Ex. 2, at 9.

Based on the foregoing actions and the limited public records relating to Impossible's alleged priority claims, Motif amended its Answer to add an inequitable conduct counterclaim. D.I. 152

---

[1] This dispute arises out of Motif's requests to Impossible and subpoena to Impossible's patent prosecution counsel, Fish & Richardson ("Fish"), which Impossible directed its litigation counsel at Wilson Sonsini Goodrich & Rosati P.C. ("WSGR") to respond to as the owner of any asserted privileges. Through this letter briefing, Motif seeks the full scope of responsive documents covered in its subpoena to Fish (which are within Impossible's control) as well as any documents directly in Impossible's possession or custody related to the waiver described herein.

[2] Four petitions were granted, seven were dismissed, and one is pending.

[3] The Office has not yet ruled on these requests.

at 23-38.  As explained in the Answer, Impossible's self-serving efforts to "correct" priority are baseless,[4] contradicted by the patents' prosecution history,[5] and Impossible's statements to the Patent Office constitute material misrepresentations and omissions of fact.  *Id.*

***Third***, thereafter, Impossible/Fish represented to the Patent Office that the supposed failure to claim priority to Brown in the '096 and '241 patents was due to a misunderstanding of the law originating in the prosecution of PCT '347 that was propagated to the '096 and '241 patents through a continuing application.  Ex. 5, PCT/US2014/011347 Renewed Petition to Accept Unintentionally Delayed Benefit Claims dated August 7, 2023, at 3.  For example, as to that originating error, Impossible/Fish represented that they "*believe*[*d*] that [Brown was] not listed on the PCT Request for [PCT '347] because [Brown] was filed more than one year prior to the filing date of" PCT '347.[6]  *Id.*  In other words, Impossible/Fish told the Patent Office that its present "correction" effort was based on a supposedly newly-acquired understanding of relevant facts and law that contradicted its prior understanding.

Before amending its Answer, Motif demanded that Impossible and its litigation/IPR counsel WSGR produce all documents and communications related to the asserted patents' priority claims and the "correction" thereof.  Ex. 6 at 1.  Motif also subpoenaed Fish on March 31, 2023 seeking, among other prosecution-related material, all documents and correspondence relating to the purported priority correction (collectively, the "Priority Documents").  Ex. 7, Document Subpoena Schedule A at 6-8.  Motif needs this material to test Impossible's and its counsels' various representations to the Patent Office about the circumstances of the purportedly newfound "aware[ness]" of an "unintentional omission."  Fish and WSGR responded with boilerplate

---

[4] By way of example, Impossible/Fish's '096 Patent petition represented that intermediary applications in the priority chain, including PCT/US2014/011347 ("PCT '347"), were "continuation" applications of their parent application, U.S. Application No. 13,941,211, even though those applications indisputably contained new matter. D.I. 152 at 35-36.  Motif had pointed out this legal defect during the '096 Patent IPR proceedings roughly 6 weeks earlier.  *E.g.*, Ex. 3, IPR2023-00206, Paper 11 (Apr. 21, 2023) at 2-4.  The Board ultimately concluded that this issue was for the USPTO Director to resolve. Ex. 4, IPR2023-00206, Paper 23 (June 16, 2023) at 11-12; *see also Honeywell Int'l Inc. v. Arkema Inc.*, 939 F.3d 1345, 1349 (Fed. Cir. 2019) (Director, not the Board, must evaluate merits of patentee's certificate of correction petition).

[5] By way of example, when originally filed, the asserted patents' "Cross-Reference to Related Applications" sections contained priority claims to other applications but identified Brown as merely "related." D.I. 19, Ex. 1 at 1:5-18.  It is plain that ***Impossible actively reconsidered these patents' priority claims during prosecution*** as, *e.g.*, Impossible/Fish submitted priority corrections during prosecution of the '096 and '306 patent applications ***but did not try to correct priority to Brown at either time***. D.I. 152 at 34.  It is simply not credible that Impossible/Fish only "became aware" of an "error" in the priority claim years later when the patents' validity was challenged on the basis of "related" prior art.

[6] That the originating error stemmed from PCT '347 contradicts Impossible's representation to the PTAB that the "omission" "*initially occurred in the filing of the '067 and the '306 patent* and was *inadvertently carried through* later-filed applications," *e.g.*, the asserted patents.  Ex. 2 at 6.

objections.  Ex. 8; Ex. 9.  At Impossible's direction, Fish then produced certain *limited* documents[7] in its possession exclusively to Impossible's litigation/IPR counsel, WSGR, for pre-production "review," to which Motif objected.  Ex. 10 (E-mail correspondence dated June 18 & July 27, 2023); Ex. 12, Aug. 15 Letter at 1.

On August 3, 2023, WSGR produced an even further limited set of Fish documents (none showing Impossible's evolving priority analysis and understanding) plus a grossly-deficient "privilege log" stating that Impossible had withheld an unknown number of documents on the basis of attorney-client privilege and/or work product.[8]  Ex. 11, Aug. 8 Letter.  Motif countered that any such protections were waived.  Ex. 12, Aug. 15 Letter at 2-3.  The parties' counsel and Fish again conferred but failed to agree.

## II. Impossible Has Waived Any Attorney-Client Privilege or Work Product Protection over the Priority Documents

It is well-settled that a party waives attorney-client privilege when that party discloses the contents of an attorney-client communication to the Patent Office for "strategic purposes."  *In re VISX*, 18 Fed. App'x 821, 824 (Fed. Cir. 2001) (Bryson, J.) (privilege waived over correspondence concerning exchanges with EPO when patentee "made representations" to USPTO "about the contents of communications and sought to use those representations to its benefit"); *accord* Fed. R. Evid. 502.  When a patentee engages in an "affirmative act" of petitioning an agency such as the Patent Office in order to correct its patent rights, the patentee places its counsel's advice directly "at issue" when the patentee seeks to reap the benefit of that act in litigation.  *E.g.*, *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1369 (Fed. Cir. 2001) (advice of counsel "placed at issue" when, after unenforceability determination, patentee petitioned ITC for reconsideration of inventorship based on certificate of correction); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 237 F.R.D. 618, 624-25, 628 (N.D. Cal. 2006) ("*Stanford*") (similar); *Dyson Inc. v. Sharkninja Operating LLC*, C.A. 14-779, 2017 WL 446043, at *3 (N.D. Ill. Feb. 2, 2017) ("Attorney advice was placed at issue in this litigation" when patentee alleged new priority date based on inventorship certificate of correction).

The same is true when—as Impossible did here—a patentee seeks to correct priority of patents it asserts against accused infringers.  *E.g.*, *SB IP Holdings LLC v. Vivint, Inc.*, C.A. 20-886, 2022 WL 16925961, at *8 (E.D. Tex. Nov. 14, 2022) (patentee "disclosed the contents of attorney-client communications to the USPTO for the 'strategic purpose' of reviving" parent application "and preserving the priority chain"—"affirmative representations before the USPTO that placed at issue the advice that [patentee] received concerning the" abandoned application); *see also Milwaukee*

---

[7] Fish admitted on a recent meet and confer that it *withheld* documents in its pre-production set that was given to WSGR based on an alleged "relevance" review with unknown parameters, which Motif seeks production of as well.

[8] Recognizing the gross deficiencies of its "log" (which did not identify any specific documents but had a few simple sentences describing categories), Impossible served a supplemental log on August 28.  Having received it less than 24 hours before this letter briefing, Motif reserves the right to challenge this log as, *e.g.*, Impossible has already waived any applicable protections for such documents based on its initial grossly deficient log.  Ex. 12, Aug. 15 Letter at 3-4.

*Elec. Tool Corp. v. Chervon N. Am. Inc.*, C.A. 14-1289, 2017 WL 2929522, at *3 (E.D. Wis. July 10, 2017) (in litigation, finding waiver after patentee "attempted to establish an earlier priority date" and backdate art asserted in IPR).

In *all* such cases, the consequence of the patentee's strategy is waiver of privilege. "The rationale underlying this type of waiver is simple: A party cannot use privileged information as a sword before the USPTO—that is, as a means of obtaining an enforceable patent—and then attempt to use the same privileged information as a shield in subsequent litigation." *SB IP*, 2022 WL 16925961, at *6; *Milwaukee*, 2017 WL 2929522, at *3 (recognizing it "would be unfair to permit [a party] to rely on favorable legal opinions, but protect the communications on which those opinions depend") (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). It would be fundamentally unfair to deprive Motif of the ability to defend itself against the asserted patents without gaining access to the underlying facts and legal analysis of those patents' priority dates, especially when Impossible sought to change priority based on counsels' affirmative representations about their evolving understanding of the facts and law. *VISX*, 18 Fed. App'x at 824 ("Having used otherwise privileged communications to support an assertion that worked to its advantage, [patentee] cannot now expect [defendant] to attempt to respond to that assertion without access to all the facts that pertain to the accuracy of [patentee]'s claim."); *Stanford*, 237 F.R.D. at 625 & n.3 ("In these instances, 'the criteria for waiver of the work product and attorney client privileges are equivalent.'"). Fairness concerns are especially relevant when—as here—the patentee's acts would "seemingly negate[] at least one of Defendants' invalidity defenses." *Dyson*, 2017 WL 446043, at *3; *see also Milwaukee*, 2017 WL 2929522, at *2 (similar).

As explained above, Impossible strategically placed the advice of its counsel squarely at issue in this litigation through its representations to the Patent Office in a series of deliberate, self-serving attempts to "correct" its patents' priority in an effort to eliminate Brown as invalidating prior art. The consequence of this strategy is that Impossible waived attorney-client privilege and work product over all documents and communications concerning its and its counsels' understanding and analysis of its patents' priority. This waiver is fair: Without access to the material concerning Impossible's and its counsels' understanding and analysis of supposed "unintentional" "errors" in its patents' priority claims, Motif will be greatly prejudiced in its ability to develop its inequitable conduct defense. *E.g., VISX*, 18 Fed. App'x at 824; *Stanford*, 237 F.R.D. at 625 ("Since Roche stands to suffer significant legal harm if it is found to infringe those patents, it is disingenuous for Stanford to conclude that Roche has suffered no prejudice.").

In such circumstances, waiver extends to *all* related subject matter, *e.g.*, any and all documents, communications and analysis of priority for Impossible's asserted and related patents. *E.g.*, *VISX*, 18 Fed. App'x at 824 (waiver extended to documents relating to basis for patentee's "very broad" positions); *Stanford*, 237 F.R.D. 618 at 626-27 (rejecting patentee's narrow waiver argument as, *e.g.*, "[o]nce a waiver has occurred, it is inappropriate to limit waiver on a temporal basis" (internal quotation omitted)). Motif is therefore entitled to obtain all Priority Documents.

### III. Conclusion

Motif respectfully requests that the Court compel Impossible to produce all Priority Documents, including but not limited to any responsive material not previously provided by Fish to WSGR.

              Respectfully,

              */s/ Jeremy A. Tigan*

              Jeremy A. Tigan (#5239)

JAT:lo
cc: Clerk of the Court (via hand delivery)
   All Counsel of Record (via e-mail)