IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMPOSSIBLE FOODS INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 22-311 (WCB) ) |
| MOTIF FOODWORKS, INC., | ) **PUBLIC VERSION** ) |
| Defendant. | ) ) |

**DEFENDANT MOTIF FOODWORKS, INC.'S REPLY LETTER
SEEKING AN ORDER COMPELLING PRODUCTION OF ALLEGED
ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT DOCUMENTS**

OF COUNSEL:

Joseph M. Paunovich
Ryan Landes
Sandra L. Haberny
Sarah Cork
Razmig Messerian
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Stephen Q. Wood
Trevor J. Quist
Derek Huish
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
2755 E. Cottonwood Parkway
Suite 430
Salt Lake City, UT 84121
(801) 515-7300

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jtigan@morrisnichols.com
ccucuzzella@morrisnichols.com

Geoffrey A. Kirsner
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor,
New York, NY 10010
(212) 849-7000

Sandy Shen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

*Attorneys for Defendant Motif FoodWorks, Inc.*

**Confidential Version Filed: September 6, 2023**
**Public Version Filed: September 13, 2023**

Impossible's response misstates the pertinent facts and applicable law. By putting at issue its counsel's advice regarding priority correction, Impossible waived privilege on that subject.[1]

***Sensormatic* applies incorrect law.**  The sole decision Impossible relies on—*Sensormatic*, a non-precedential order—was decided on incorrect legal standards. In *Sensormatic*, Genetec (represented by Fish & Richardson P.C.) sought privilege waiver. Genetec initially asserted that Third Circuit law governed waiver and later attempted unsuccessfully to correct its position, arguing that Federal Circuit law applied instead. *Sensormatic Elecs., LLC v. Genetec (USA) Inc.*, C.A. No. 20-760-GBW, 2022 WL 14760185, at *1, n.2 (D. Del. Oct. 20, 2022). After losing, Genetec objected that the *Sensormatic* magistrate had "***err***[ed] by ***misapplying inapplicable Third Circuit law*** instead of applicable Federal Circuit law more analogous to this dispute." Ex. 13, Mem. Order 2-3, C.A. No. 20-760 (Dec. 30, 2022) (D.I. 245) (finding argument waived) (all emphases added herein). Regardless, *Sensormatic* is distinguishable as explained below.

***Sensormatic* is also inapt because Impossible did use privileged information as a sword.** In *Sensormatic*, the magistrate judge found that "in none of the" patentee's allegations "does Plaintiff attempt to use the actual content of attorney-client communications as a sword—i.e., as an affirmative means to defeat Defendants' counterclaim." 2022 WL 14760185, at *4. Here, by contrast, Impossible is using the content of attorney-client communications (discussed further below) affirmatively and offensively. Impossible is relying on counsel's direction that priority correction is proper, and relying on counsel's purported basis for delaying in seeking correction, in order to eliminate Motif's Brown-based invalidity challenges. *E.g.*, D.I. 187, 1. Per *Sensormatic*, "[i]t is that type of offensive use of otherwise privileged material that, pursuant to relevant precedent, amounts to putting privileged attorney-client communications 'at issue' in a case." 2022 WL 14760185, at *4. That is the case here: Impossible is directly and deliberately making offensive use of communications with counsel—*e.g.*, the propriety of priority correction and the basis for delay—to gain a tactical litigation advantage.[2]

**Impossible wrongly suggests *testimony* is required to trigger waiver.**  Impossible argues that only revealing "actual content" of communications—*e.g.*, in a declaration or deposition—can trigger waiver. D.I. 190, 3-4. That would effectively require testimony with an express disclosure, which not even *Sensormatic* said was necessary. *See* 2022 WL 14760185, at *4 (patentee did not "***characterize, selectively disclose, or otherwise rely on the substance of any withheld communications***" in its defense).

In fact, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1343, 1349-50 (Fed. Cir. 2005) (waiver triggered by company

---

[1] The documents at issue here are not "less than 50" items on WSGR's supplemental log. D.I. 190, n.1. They include Impossible's documents, which it controls, in Fish's hands. *Id.* Ex. 1.

[2] Impossible wrongly suggests that Motif seeks documents relating to the mere "fact" of "legal analysis." D.I. 190, n.4. In fact, Motif seeks documents relating to Impossible's new-found position that Brown is not true prior art—a defense that exists only because Impossible relies on attorney communications supposedly supporting the notion that its delay was "unintentional."

1

document stating "counsel has advised a [§102(b)] bar was not established").  Indeed, under Fed. R. Evid. 502(a), waiver is triggered when (*inter alia*) "the disclosed and undisclosed **communications or information** concern the same subject matter."  In circumstances like those here, as explained in Motif's opening letter, the dispositive factor supporting waiver is that a party engages in the "affirmative act" of seeking litigation relief based on statements made to the Patent Office.  *E.g.*, *Winbond Elecs. Corp. v. [ITC]*, 262 F.3d 1363, 1369 (Fed. Cir. 2001) (corr.); *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14-CV-779, 2017 WL 446043, at *3 (N.D. Ill. Feb. 2, 2017) ("[I]t was the affirmative act of petitioning the [ITC] for reconsideration based on the certificate of correction that was the basis of finding waiver.").  Thus, although Impossible tries to distinguish the present facts (*e.g.*, statements in priority correction petitions) from the disclosures in Motif's cited cases (*e.g.*, declarations and testimony), that argument fails because those cases do not turn on how the patentee discloses or relies on the substance of attorney-client communications.

**Impossible placed attorney-client communications at issue here.**  Impossible is wrong that its representations to the Patent Office do not "reveal" or "depend on" attorney-client communications.  D.I. 190, 3-4.  Such communications are at the very heart of Impossible's defense that priority correction is appropriate[3] and Impossible explicitly characterized the substance of these communications in statements to the Office.  Contrary to its assertions, for example, Impossible did not "become aware of" any "error" in priority from Motif's IPR petitions because the petitions do not mention any such "error."  Impossible learned of the alleged "error" from its counsel.  Impossible/Fish also told the Patent Office that counsel had performed a "*diligent investigation* into the challenges of each [IPR] petition, including invalidity and priority issues" and "*investigation* of the extensive patent family and prosecution histories" thereof.  D.I. 187, 1; D.I. 152-1, Ex. 3.  Impossible's supplemental log (and common sense) confirm that counsel (Fish and WSGR) communicated with Impossible about these investigations and how priority could only be corrected if it was characterized as entirely unintentional.  Ex. 14 at 18, 46, 65.  Impossible's "correction" effort also arises from "*consulting* with [WSGR] to *take into consideration* … co-pending litigation" (D.I. 152-1, Ex. 3)—which unambiguously refers to communication(s).  Having disclosed the substance of such communication(s) to the Office, Impossible cannot withhold documents on the same subject matter.

**Impossible does not adequately address fundamental fairness**.  Impossible crafted a priority-correction defense based on attorney advice, relying on assertions about what counsel learned, and when.  If Impossible's privilege objection stands, Motif will be unable to probe its claim that its entire delay was unintentional and not deliberate.  That violates the balance of sword/shield law: "[A] privilege holder cannot be allowed, after disclosing as much as he pleases, to withhold the remainder."  *Milwaukee Elec. Tool Corp. v. Chervon N. Am. Inc.*, 2017 WL 2929522, at *1 (E.D. Wis. July 10, 2017) (quoting *Fort James*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)).  So too here: Impossible's documents, which it controls in possession of Fish or WSGR, must be produced.

---

[3]  Impossible tries to brush off the importance of its counsel's advice on priority "correction" by suggesting there was an "evident" priority mistake.  D.I. 190, n.4.  Not so.  If the mistake were "evident," Impossible would have corrected it at the same time it corrected other aspects of its patents' priority during prosecution, rather than six years later.  D.I. 187, n.5.  The Patent Office did not think the mistake was evident either.  They demanded that Impossible provide additional evidence to explain its multi-year delay.  *E.g.*, Ex. 15 at 2.

        Respectfully,

        */s/ Jeremy A. Tigan*

        Jeremy A. Tigan (#5239)

JAT/rah  
Attachments  
cc: Counsel of Record (via e-mail)